DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

| | |
|---|---|
| **WARREN MOSLER and RAMO, LLC,**<br><br>Plaintiffs,<br><br>v.<br><br>**J. DONALD CAIRNS, as Personal Representative of the Estate of Tracy Turner,**<br><br>Defendant.<br>_____ | 1:19-cv-00007-WAL-EAH |

**TO:** Steven Douglas Weber, Esq.
Yohana M. Manning, Esq.
*On behalf of Plaintiffs*
Alisha Udhwani, Esq.
Douglas L. Capdeville, Esq.
*On behalf of Defendant*

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO STAY

**THIS MATTER** comes before the Court on the Motion to Stay Discovery filed by Defendant J. Donald Cairns, as Personal Representative of the Estate of Tracy Turner. Dkt. No. 34. Cairns requests a stay of discovery pending the resolution of the Estate's Motion to Dismiss, filed in February 2019.[1] Dkt. No. 2. For the reasons that follow, the Court will grant the motion to stay discovery with the exception that, once a substitute representative of the Estate is appointed, that representative will complete Plaintiffs' Request for Jurisdictional Interrogatories.

---

[1] A suggestion of death upon the record of J. Donald Cairns was filed on the docket on July 8, 2022. Dkt. No. 31.

## I.    BACKGROUND

In December 2018, Plaintiffs Warren Mosler and RAMO, LLC, a Florida limited liability corporation, filed a complaint in Virgin Islands Superior Court, alleging three counts of wrongful use of civil proceedings. Dkt. No. 1-1. Plaintiffs alleged that Defendant, J. Donald Cairns, as the personal representative of the Estate of Tracy Turner, had wrongfully used the civil proceedings in *J. Donald Cairns, As Personal Representative of the Estate of Tracy Turner v. Websta's Aviation Services, Inc.* No. 1:18-cv-00015 (D.V.I.) (the "DVI" case), that required Mosler and RAMO to incur "over $1 million in legal fees as a result of Defendant asserting legal claims against [Plaintiffs], even when Defendant knew or should have known that they are baseless and have no merit." Dkt. No. 1-1 ¶ 7. The complaint alleged jurisdiction over Cairns due to his participation in the DVI case, which arose from a 2008 airplane crash that killed Tracy Turner in Puerto Rico. That case, filed in Ohio, was later consolidated with other cases in the Southern District of Florida—the Multi-District Litigation ("MDL") case.[2] *Id.* ¶¶ 8, 11. Cairns was substituted for Chris Turner (Tracy Turner's brother) in both the MDL case and the DVI case. *Id.* ¶ 12.

In November 2013, Cairns filed a Second Amended Complaint in the MDL case; both Mosler and RAMO filed motions to dismiss. *Id.* ¶¶ 15-17. The court dismissed RAMO and, in 2014, after Mosler filed a motion to dismiss Counts 1, 2, and 3 of the operative complaint, the

---

[2] One prong of the MDL case was sent to the DVI in May 2018 and became the DVI case. *See infra*.

*Mosler et al v. Cairns*
1:19-cv-00007-WAL-EAH
Order Granting Motion to Stay
Page 3

MDL court dismissed Counts 1 and 2. *Id.* ¶ 17. In 2015, Cairns filed a third amended complaint in the MDL case, asserting six claims; Count 2 was brought under the Montreal Convention for Joint Venture Liability against Websta's and Mosler. *Id.* ¶ 18. In November 2015, the court denied Mosler's motion for summary judgment. *Id.* ¶ 21. Mosler told Defendant that Count 2 lacked merit; in December 2016, the MDL court dismissed Count 2 with prejudice. *Id.* ¶ 24. As to its causes of action, the instant complaint alleged that asserting Count 2 against Mosler caused him to spend "the maximum amount in legal fees and expenses," and constituted wrongful use of civil proceedings. *Id.* ¶ 29. In addition, asserting Counts 1 and 2 of the SAC constituted wrongful use of civil proceedings, *id.* ¶ 35, as did Cairns's role in initiation and continuation of proceedings against RAMO, *id.* ¶¶ 39-40.

Cairns removed the case to district court in February 2019 on the basis of diversity jurisdiction. Dkt. No. 1. Cairns then immediately moved to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Dkt. Nos. 2, 4. He argued that because Tracy Turner was an Ohio resident at the time of her death, and because the Personal Representative was appointed as a fiduciary to the Estate pursuant to Ohio law, and he as the Defendant was a resident of Ohio, there was no general jurisdiction over the Personal Representative of the Estate in the Virgin Islands. Dkt. No. 2 at 1. And because the complaint alleged "wrongful use of civil proceedings" arising out of litigation pending in the U.S. District Court for the Southern District of Florida, the alleged tortious conduct of Defendant, even accepting the

*Mosler et al v. Cairns*
1:19-cv-00007-WAL-EAH
Order Granting Motion to Stay
Page 4

complaint's allegations as true, occurred entirely in Florida. Consequently, there was no basis for specific jurisdiction over the Defendant either. *Id*. at 2.

The motion provided additional background to the lawsuit that is helpful to set the context of the motions to dismiss and for a stay, as follows:

> The Defendant's decedent, Tracy Turner, was killed in a plane crash that occurred on an international flight between the British Virgin Islands and Puerto Rico, and was piloted by Websta's Aviation Services, Inc., a Virgin Islands corporation. After a period of investigation and due diligence, the Turner Estate initiated a wrongful death lawsuit in the Northern District of Ohio against Websta's Aviation Services, Inc., RAMO LLC, and Warren Mosler pursuant to the Montreal Convention for the Unification of Certain Rules for International Carriage by Air, a multinational treaty which provides legal remedies for injury or death sustained on an international flight[.]
>
> The Turner Estate filed a separate lawsuit in the Southern District of Florida against RAMO LLC under the Florida Uniform Fraudulent Transfer Act, because the Turner Estate discovered that Websta's Aviation Services, Inc. transferred the remaining five aircraft in its fleet to RAMO LLC approximately two weeks after the above-referenced plane crash. After a trial of the matter, the Court found that RAMO LLC and Mosler were "insiders" to Websta's Aviation Services, and that the transfers must be set aside as a fraudulent conveyance under . . . the Florida Uniform Fraudulent Transfer Act. *See Turner v. RAMO LLC*, 2011 WL 13151047. This decision was upheld by the Eleventh Circuit Court of Appeals. *See Turner v. RAMO LLC*, 458 Fed. Appx. 845 (11th Cir. 2012).
>
> \* \* \*
>
> The Turner Estate was forced to raise new fraudulent transfer allegations against Mosler after learning that Mosler transferred the aircraft from RAMO for less than market value, despite the pendency of fraudulent transfer proceedings. In its January 25, 2015 Order, the Court denied Mosler's Motion to Dismiss the Turner Estate's fraudulent transfer cause of action, stating that the Turner Estate has "properly pled" fraudulent transfer claims against Mosler, and that it "ha[s] a judgment against RAMO." Court Order dated Jan. 23, 2015, D.E. 452, 11-md-02246 (S.D. Fla.)

*Mosler et al v. Cairns*
1:19-cv-00007-WAL-EAH
Order Granting Motion to Stay
Page 5

> The Turner Estate also filed a lawsuit against the Federal Aviation Administration for allegedly erroneous acts and omissions of Air Traffic Control, under the Federal Tort Claims Act, 28 U.S.C. § 1346. At the same time, the estates of the pilot and another passenger killed in the crash filed similar lawsuits, and all of the actions were transferred to the Southern District of Florida for consolidated pre-trial proceedings by the Judicial Panel on Multidistrict Litigation. *See . . .* Order of the JPML. The cases were collectively captioned *In Re: Air Crash Near Rio Grande, Puerto Rico*, MDL No. 2246.
>
> After several years of litigation, the Florida District Court determined it did not have personal jurisdiction over the Virgin Islands corporation, Websta's Aviation Services, Inc., which had not made an appearance . . . and was in default. Because the court did not have personal jurisdiction over Websta's, it could not enter a default judgment against it, and the Court ordered the case transferred to the District Court of the Virgin Islands in order to serve the Defendant pursuant to 28 U.S.C. § 1631. *See . . .* Court Order, 9:11-md-02246, D.E. 622. In accordance with the Court's Order, the Turner Estate's wrongful death claim was transferred to [the District of the Virgin Islands]. *See Turner v. Websta's Aviation Services, Inc.*, 1:18-cv-00015, (D.V.I).

*Id*. at 2-5. Plaintiffs did not object to this summary.

Plaintiffs opposed the motion, arguing that the May 2018 Order by the MDL court transferred venue of the MDL cases to the Virgin Islands, and Cairns was pursuing the Estate's case against Websta in the DVI case. Dkt. No. 6 at 1-2. They argued that Cairns caused tortious injury in the VI by initiating and prosecuting non-meritorious claims against a VI resident, pursuant to 5 V.I.C. § 4903(a)(4).[3] *Id*. at 4-5. Since the instant case arose out of the

---

[3] This section of the Virgin Islands Long-Arm Statute provides that "[a] court may exercise personal jurisdiction over a person who acts directly. . . as to a claim for relief arising from the person[] . . . (4) causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory." 5 V.I.C. § 4903(a)(4).

same subject matter as the MDL case, that made jurisdiction in the VI proper, and actions for wrongful use of civil proceedings must be initiated as a separate case. *Id*. at 5-6. Moreover, due process would not be violated because Cairns purposefully availed himself of jurisdiction in the VI by his continued involvement in the MDL case which directed his activities at Mosler and therefore at the VI. *Id.* at 6-7.

In his Reply filed in March 2019, Cairns pointed out that Plaintiffs' opposition was premised on an incorrect assertion that the entire MDL had been transferred to the VI, but only the wrongful death case against Websta's Aviation—which was distinct from the fraudulent transfer claims still pending against RAMO and Mosler in Florida—had been. Dkt. No. 7 at 1-2. The Long Arm Statute was not satisfied: RAMO was not a VI resident; the actions complained of occurred in Florida and Ohio; and that is where any alleged injury occurred. In addition, Cairns's only contact with the VI was the case against Websta (not Mosler or RAMO, which were not parties to that suit). The Estate did not direct legal activity to the DVI but was sent there by another court, and forcing an estate with no contacts in the forum except in a case where it was sent, to answer allegations that occurred in Florida, did not comport with fair play and substantial justice. *Id.* at 6.

Other than substitutions of counsel, nothing happened in the instant case until June 2022 when the Court set an Initial Conference. Dkt. No. 21. The parties then filed initial disclosures and discovery memoranda. Dkt. Nos. 24-27. On July 5, 2022, following the initial

*Mosler et al v. Cairns*
1:19-cv-00007-WAL-EAH
Order Granting Motion to Stay
Page 7

conference, the Court issued an order setting a briefing schedule for Cairns's filing a motion to stay discovery. Dkt. No. 28. The Court also issued a scheduling order. Dkt. No. 29.

### A. Extension of Time to File Response to Plaintiff's Request for Interrogatories

On July 8, 2022, Cairns's counsel filed a suggestion of death of Defendant Cairns on the record, stating that he died on June 15, 2022. Dkt. No. 31. On July 12, 2022, Cairns's counsel moved for an extension of time to file a response to Plaintiffs' request for jurisdictional interrogatories, observing that they had learned of Cairns's death on July 8, he could not execute the response to the interrogatories, and they needed an extension until a new representative of the Estate of Tracy Turner had been appointed. Dkt. No. 32. They explained that they did not know of Cairns's death until July 8, after the July 5 initial conference, or else they would have advised the Court and opposing counsel of that fact. *Id.*

In Opposition, Plaintiffs asserted that the extension motion should be denied because: (1) it violated LRCi 37.1 as Defendant did not arrange for a pre-filing conference before submitting the motion; (2) it did not specify a timeframe for a response, and thereby sought an indefinite stay; and (3) Defendant failed to show excusable neglect to justify his failure to timely respond or seek a belated extension of time to the interrogatories. Dkt. No. 38.

In Reply, Defendant's counsel underscored that the only reason Defendant could not produce responses to the interrogatories was because the representative of the Estate died, and thus no one could sign the responses on behalf of the Defendant. Dkt. No. 43. In addition, there was no clear timeline as to when a new representative would be appointed, so counsel

could not provide a specific date. Excusable neglect existed because the Estate's representative died only 5 days after the requests were propounded, and counsel could not have obtained a signed and notarized copy of the responses in that time frame. *Id.* at 2.

On July 26, 2022, the Court held an informal conference with counsel, after which it issued an Order directing Defendant's counsel to file a status report concerning the process by which an Estate representative is appointed in Ohio, and the progress made in appointing a substitute representative in the instant case. Dkt. No. 39. Defendant's counsel indicated that it would respond to the production of documents and expressed concern that engaging in discovery would waive its personal jurisdiction defense. *Id.* Plaintiffs agreed that Defendant's participation in discovery would not constitute a waiver. *Id.*

### B. Motion to Stay Discovery

Defendant's counsel moved to stay discovery on July 19. Dkt. No. 34. Counsel argued that a stay would not unduly prejudice the Plaintiffs since the action had been originally filed in December 2018, Defendant filed a motion to dismiss following removal in February 2019 and, once briefing was completed in March 2019, the parties had not engaged in discovery until June 2022, indicating that Plaintiffs had not been eager to move the case forward. *Id.* at 2. Denial of the stay would create undue hardship for Defendant, being improperly hauled into court in the VI and incurring the cost of legal fees. *Id*. at 3. A stay would simplify the issues because the case would be dismissed for lack of personal jurisdiction; finally, discovery had not been completed, even though the case was three years old. *Id.*

*Mosler et al v. Cairns*
1:19-cv-00007-WAL-EAH
Order Granting Motion to Stay
Page 9

In response, Plaintiffs assert that the passage of time after briefing on the motion to dismiss is "not of their making." Dkt. No. 41 at 5. After hiring new counsel (in April 2022), Plaintiffs proceeded with discovery and the Court issued a discovery schedule. They contended that a further delay would prejudice them and relevant evidence may be lost or destroyed. *Id.* at 6. Denial of a stay would not create a hardship for Defendant because his assertion that he would incur legal fees was conclusory, broad, and lacked factual support. *Id.* at 7. A stay would not simplify the issues and trial because the motion to dismiss argued only that the Court lacked personal jurisdiction over the Defendant; if the court found no jurisdiction, the case should be transferred. *Id*. at 8. Finally, because discovery was not complete, the last factor weighed in favor of denying a stay. *Id.* at 9.

In reply, Defendant emphasized that Plaintiffs did not move the case forward in the three years it had been pending; Plaintiffs' requests for discovery were time consuming and extensive; and although Plaintiffs contended that even if the motion to dismiss were granted, the case would be transferred to another jurisdiction making discovery inevitable, they provided no legal authority for that proposition (having never requested that it be transferred). Dkt. No. 44 at 1-3. Moreover, if the court granted the motion to dismiss, the case would be dismissed, not transferred. *Id.* at 3. Because the Estate held no assets, the expense of discovery would make it difficult for Defendant to defend the claims. *Id*. Defendant's statement that denial of the stay would create hardship was not conclusory because he had incorporated his due process arguments into the motion, substantiated by fact and law. *Id*.

*Mosler et al v. Cairns*
1:19-cv-00007-WAL-EAH
Order Granting Motion to Stay
Page 10

On July 29, 2022, Defendant's counsel filed a status report concerning attempts to obtain a new representative for the Estate. Dkt. No. 40. The process involved an application to Ohio probate court to replace the representative; that court would name a substituted representative—an Ohio citizen—and would order a background check. *Id.* The check would move faster if the new representative was an attorney. Although counsel was "looking into hiring an attorney within the State of Ohio who would agree to become the representative of the Estate of Tracy Turner," the problem was that the Estate was being sued and had no assets, which made locating an attorney to take on the role difficult. *Id*. at 2-3.

## DISCUSSION

### I. Applicable Legal Principles

The Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings. Rule 26 does, however, provide that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c). It is well settled, though, that "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936). Matters of docket control and the conduct of

*Mosler et al v. Cairns*
1:19-cv-00007-WAL-EAH
Order Granting Motion to Stay
Page 11

discovery have long been "committed to the sound discretion of the district court," *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982), including whether to stay discovery, *Ferguson v. USAA Gen. Indem. Co.*, 334 F.R.D. 407, 409 (M.D. Pa. 2019) (citing, inter alia, *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 365 (3d Cir. 2001)). That discretion extends to decisions by U.S. Magistrate Judges. *See Harman v. Datte*, 427 F. App'x 240, 243 (3d Cir. 2011) (finding that magistrate judge did not abuse his discretion in staying discovery pending review of motions to dismiss the complaint).

Still, motions to stay discovery "are not favored because when discovery is delayed or prolonged it can create case management problems which impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Worldcom Techs., Inc. v. Intelnet Int'l, Inc.,* 2002 WL 1971256, at *6 (E.D. Pa. Aug. 22, 2002) (internal quotation marks omitted). In addition, a stay of discovery "is not appropriate solely because a motion to dismiss is pending." *Pennsylvania v. Navient Corp.*, 348 F. Supp. 3d 394, 401 (M.D. Pa. 2018) (internal quotation marks omitted); *see also* LRCi 26.6 (discovery not automatically stayed upon filing of a Rule 12 motion to dismiss).

In this Circuit, when deciding whether to exercise discretion to grant a stay of discovery after a dispositive motion has been filed, courts weigh four considerations:

> (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and/or a trial date has been set.

*Mosler et al v. Cairns*
1:19-cv-00007-WAL-EAH
Order Granting Motion to Stay
Page 12

*Clarity Sports Int'l LLC v. Redland Sports*, 400 F. Supp. 3d 161, 182 (M.D. Pa. 2019) (internal quotation marks omitted); *see also Vitalis v. Crowley Caribbean Servs., LLC*, No. 20-cv-00020, 2021 WL 4494192, at *1 (D.V.I. Sept. 30, 2021).

In *Ainger v. Great American Assurance Company*, No. 1:20-cv-00005, 2022 WL 3139079, at *7 (D.V.I. Aug. 4, 2022), this Court recently adopted a "preliminary peek" approach in deciding whether to stay a case pending resolution of a dispositive motion. This involves a preliminary consideration of the potential merits of the dispositive motion and an assessment of whether the motion to dismiss is likely to be granted. Therefore, in assessing the third prong of the stay test, this Court will follow the preliminary peek cases that conclude a stay is warranted only when the defendant makes a "clear and convincing" showing that the motion to dismiss will likely be granted. In the Court's view, this concise articulation emphasizes the high bar a movant needs to overcome in order for its stay motion to be successful. *See Warden v. Tschetter Sultzer, P.C.*, 2022 WL 1487576, at *4-5 (D. Colo. May 11, 2022). The Court will now assess the four factors.

### A. Whether a Stay Would Unduly Prejudice or Present a Clear Tactical Disadvantage to the Non-Moving Party

Cairns argues that the first factor weighs in his favor because Plaintiffs filed the case in 2018 and, once briefing on the motion to dismiss was completed in March 2019, the parties did not engage in discovery until June 2022, indicating that Plaintiffs have not been eager to move the case forward. Plaintiffs respond that the passage of time after briefing on the motion to dismiss was "not of their making," that they have proceeded with discovery

*Mosler et al v. Cairns*
1:19-cv-00007-WAL-EAH
Order Granting Motion to Stay
Page 13

after hiring new counsel in April 2022, further delay would prejudice them, and relevant evidence may be lost or destroyed.

This factor weighs heavily in favor of a stay. The three instances of wrongful use of civil proceedings of which Plaintiffs complain occurred prior to December 2016 in the MDL litigation. *See* Dkt. No. 1-1. Plaintiffs initially filed the instant complaint in December 2018. Once it was removed to district court and briefing on the motion to dismiss was completed in March 2019, over three more years passed before Plaintiffs proceeded with discovery in June 2022. Given the extensive delay between the events at issue and the filing of the complaint, and the additional span of time between filing the complaint and initiating discovery, a stay of discovery at this stage would not appear to unduly prejudice Plaintiffs or present them with a clear tactical disadvantage. While Plaintiffs cite *Udeen v. Subaru of America, Inc.*, 378 F. Supp. 3d 330, 333 (D.N.J. 2019), as generally standing for the proposition that a delay in discovery can be prejudicial to plaintiffs because memories fade and evidence can be lost, they do not explain how that proposition might impact the evidence here. A delay in resolving the dispositive motion does not, without more, establish that undue prejudice will result from issuing a stay. *Actelion Pharms., Ltd. v. Apotex, Inc.*, 2013 WL 5524078, at *4 (D.N.J. Sept. 6, 2013). That would not be the case here.

**B. Whether denial of a stay would create a clear case of hardship or inequity for the moving party**

Cairns contends that permitting discovery to go forward would cause hardship because of the cost and time involved in discovery, where Plaintiff could not articulate a

*Mosler et al v. Cairns*
1:19-cv-00007-WAL-EAH
Order Granting Motion to Stay
Page 14

recoverable claim against it, and additional discovery would not alter that reality. Plaintiffs respond that denial of a stay would not create a hardship because Cairns broadly alleged harm and violation of due process, and such general argument is insufficient to establish harm, citing *Kiley v. Tumino's Towing, Inc.*, 2019 WL 2432121, at *3 (D.N.J. June 10, 2019).

While Defendants "are always burdened when they are sued, and the ordinary burdens associated with litigating a case do not constitute undue burdens," *Warden*, 2022 WL 1487576, at *5 (internal quotation marks, alterations, and citations omitted), the fact is that Defendant cannot respond to the interrogatories; only a duly-appointed substitute representative could do so. In addition, given that the Estate has no assets, it is clear that merits discovery would present an undue hardship on the Estate. Moreover, if the Court concludes that Cairns has made a "clear and convincing showing" that the motion to dismiss would be granted, it would be unfair to subject Cairns to merits discovery—and the Court so concludes. This factor also weighs in favor of a stay.

### C. Whether a Stay Would Simplify the Issues and the Trial of the Case

Cairns argues that a stay would simplify the issues and the trial of the case because if the Court grants the motion to dismiss, no claims will remain against it and the litigation would be over. He incorporates his personal jurisdiction arguments into the discussion of this stay factor. Plaintiffs argue that a stay will not simplify the issues because Defendant argues only that the Court lacks personal jurisdiction over him, Defendant's argument is conclusory, and instead of dismissal, the case should be transferred. Having reviewed the

*Mosler et al v. Cairns*
1:19-cv-00007-WAL-EAH
Order Granting Motion to Stay
Page 15

motion to dismiss, the Court concludes that Cairns has made a clear and convincing showing that it would likely be granted.

A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state. Establishing personal jurisdiction in the Virgin Islands involves a two-part analysis. "First, there must be a statutory basis for exercising jurisdiction over the nonresident defendant in accordance with the Virgin Islands Long–Arm Statute, V.I.Code Ann. tit. 5, § 4903, and second, the nonresident defendant must have minimum contacts with the Virgin Islands sufficient to satisfy constitutional due process." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Here, Plaintiffs asserted statutory jurisdiction under 5 V.I.C. § 4903(a)(4). *See* Dkt. No. 6 at 4-5. Accepting that there was "an act or omission done outside the Virgin Islands, causing injury in the Virgin Islands," the statute also requires that "the person causing the injury must either regularly do business in the Virgin Islands, [or] engage in a persistent course of conduct in the Virgin Islands[.]" *Club St. Croix Homeowners Ass'n., Inc. v. Shell Oil Co.,* 2007 WL 4800358, at *3 (D.V.I. Nov. 30, 2007). To satisfy this second element, Plaintiffs "must establish that there is a reasonable connection between the Virgin Islands and [Defendant]. To that end, [Plaintiffs] must show that [Defendant's] activities, including a course of conduct [and] soliciting business . . . in the territory, [are] sufficient cumulatively to establish a jurisdictional presence." *Id.* (internal quotation marks omitted). "Those activities need have

*Mosler et al v. Cairns*
1:19-cv-00007-WAL-EAH
Order Granting Motion to Stay
Page 16

no relationship to the tortious action. Rather, it is the totality of a defendant's connections with the forum state that must be considered." *Id.*

Plaintiffs' allegations, taken as true, likely fail to meet the statutory basis for personal jurisdiction. They argue that Defendant caused tortious injury in the VI by initiating and prosecuting non-meritorious claims against a VI resident; the MDL case has been transferred to the VI; and "jurisdiction is proper in the court where the MDL case is pending"—i.e., the District of the Virgin Islands. Dkt. No. 6 at 4-5. Plaintiffs do not address the element of § 4903(a)(4) that the Estate must either regularly do business or engage in a persistent course of conduct in the Virgin Islands. Only one prong of the MDL litigation was transferred to the Virgin Islands in May 2018, by Order of the MDL Court (not by the Estate's affirmative request), with the remainder of the MDL case remaining in Florida. At the point Plaintiffs filed the instant complaint in December 2018, the only litigation that had occurred in the DVI case was the filing of a Fourth Amended Complaint in July 2018 and issuance of summons; proof of service on Defendant Websta's Aviation was not effected until February 2019. 1:18-cv-00015, Dkt. Nos. 40, 45, 47, 51. Under no reading of the Long-Arm Statute could this kind of contact by the Estate with the Virgin Islands satisfy the requirement that it "regularly" did business or engaged in a "persistent" course of conduct in the V.I.

But even if Plaintiffs established statutory jurisdiction and the Court was required to examine constitutional due process, Plaintiffs would likely fail on that ground as well. The due process analysis focuses on the nonresident defendant's "minimum contacts" with the

*Mosler et al v. Cairns*
1:19-cv-00007-WAL-EAH
Order Granting Motion to Stay
Page 17

forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985). Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction. A court may exercise general jurisdiction whether or not those contacts are related to the plaintiff's cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415-16 (1984). Specific jurisdiction exists if the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp.,* 471 U.S. at 472 (internal quotation marks and citation omitted). Case law holds that litigation in a forum state—Plaintiffs' argument for jurisdiction—does not, by itself, establish general jurisdiction. *See, e.g., Senju Pharm. Co. v. Metrics, Inc*, 96 F. Supp. 3d 428, 441 n.8. (D.N.J. 2015) (citing cases).

Plaintiffs appear to raise specific jurisdiction under the effects test set forth in *Calder v. Jones*, 465 U.S. 783 (1984), where they must demonstrate that the defendant committed an intentional tort; plaintiffs felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm suffered; and that defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). The *Calder* test plainly falters on the third prong, as the Estate litigated the MDL case in Florida, all of the allegedly improper filings that injured Plaintiffs occurred in that Florida court, not in the Virgin Islands, and Mosler and RAMO were litigating the MDL case in Florida. The Estate could not reasonably anticipate "being haled into court" in the VI solely because it allegedly

*Mosler et al v. Cairns*
1:19-cv-00007-WAL-EAH
Order Granting Motion to Stay
Page 18

intentionally caused harm that was felt in the forum state if it did not expressly aim its conduct at that state. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980).

Accordingly, the Court concludes that Defendant has made a clear and convincing showing that the motion to dismiss will likely be granted, and this prong also weighs in favor of a stay.

### D. Whether Discovery is Complete and/or a Trial Date Has Been Set

The Court issued a Scheduling Order on July 5, 2022; discovery in this three-year-old case had barely started when the suggestion of death and the motion to stay discovery were filed. Plaintiffs assert that *Morgan v. Quest Diagnostics Inc.*, 2020 WL 7183503 (D.N.J. June 8, 2020) weighs in their favor on this prong. This Court disagrees with the one-sentence conclusion in *Morgan* that, if discovery is incomplete and no trial date has been set, those circumstances weigh in favor of denying a stay. *Id.* at *2. This Court has arrived at the opposition conclusion when evaluating this prong; since minimal discovery has taken place, that would weigh in favor of granting a stay. *See Ainger*, 2022 WL 3139079, at *10.

### CONCLUSION

In sum, all four factors weigh in favor of granting a stay of discovery. The Court therefore concludes that a stay of discovery as to the Defendant, the Estate of Tracy Turner, is warranted pending the district court's resolution of its motion to dismiss—with one exception. Once a substitute representative of the Estate is appointed, that representative shall respond to the jurisdictional interrogatories propounded by Plaintiffs.

*Mosler et al v. Cairns*
1:19-cv-00007-WAL-EAH
Order Granting Motion to Stay
Page 19

Accordingly, it is hereby **ORDERED**:

1. Defendant Estate of Tracy Turner's Motion to Stay Discovery, Dkt. No. 42, is **GRANTED**.

2. Discovery as to Defendant is **STAYED** pending resolution of the Estate's Motion to Dismiss, EXCEPT for the Response to the Jurisdictional Interrogatories, which the Estate shall files within ten days after a substitute representative for the Estate of Tracy Turner has been appointed.

3. Defendant's Moton for Extension of Time to File Response/Reply to Plaintiffs' Request for Interrogatories (Dkt. No. 32) is **GRANTED**.

4. Defendant's counsel shall file monthly reports concerning the status of efforts to appoint a substitute representative for the Estate of Tracy Turner. The next report shall be filed on or before **August 29, 2022**.

ENTER:

Dated: August 16, 2022

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE